UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JULES DEUTSCH, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 06-8450 |
| STATE FARM FIRE & CASUALTY CO. | SECTION: "A" (5) |

### ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment As to Plaintiffs' Mold Claims (Rec. Doc. 49)** filed by defendant State Farm Fire & Casualty Co. Plaintiffs, Jules Deutsch and Cynthia Deutsch, oppose the motion. The motion, set for hearing on August 5, 2009, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is GRANTED in the fashion explained below.

### I. BACKGROUND

This is a suit under a homeowner's insurance policy for damages sustained during Hurricane Katrina. Plaintiffs' home, located at 1749 Coliseum St. in New Orleans, is known as the Grace King House. The house sustained significant damage during Hurricane Katrina when high winds toppled a neighboring 70 foot pine tree onto the downtown side of the property. According to

---

[1] State Farm has requested oral argument but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

Plaintiffs, two chimneys, a substantial portion of the roof over the front portion of the house, and the masonry wall on the downtown side of the building were heavily damaged resulting in a substantial amount of rainwater entering a third-floor bedroom and stairwell.  Plaintiffs contend that the rainwater then spread laterally and downward, through cracks in the wooden floors, down walls and through wall cavities, damaging virtually everything in its path.  Additionally, hurricane-driven wind entered the home through various windows and doors, including a stained-glass window that was blown in during the storm.  Mold subsequently developed on virtually every part of the home that was damaged by water during the storm.

On August 29, 2005, the date that Hurricane Katrina made landfall, State Farm had in effect homeowners policy no. 18-C9-7772-5 for Plaintiffs' home.  Following Katrina, Plaintiffs filed claims with State Farm for property damage related to the storm.  Plaintiffs eventually filed suit and State Farm removed the case to this Court on October 18, 2006.  Plaintiffs' claims will be tried to a jury on November 30, 2009.

State Farm now moves for summary judgment as to Plaintiffs' mold claims.  State Farm contends that Plaintiffs' policy unequivocally excludes coverage for mold damage regardless of its cause.  State Farm seeks an order providing that Plaintiffs may not recover for mold damage, testing, and/or remediation in this

case, including the fees of Gurtler Bros. Consultants, Inc., Ryan Environmental Services, Driskill Environmental Consultants, LLC, Mold Testing and Remediation, LLC, Richard D. White, and Kid Gloves, Inc.[2]

## II. DISCUSSION

### 1. *The Parties' Arguments*

State Farm argues that Plaintiffs cannot recover for mold damage in this lawsuit because the policy's mold endorsement unambiguously excludes coverage for mold damage regardless of its cause. State Farm explains that it is not seeking to avoid its obligation with respect to an otherwise covered loss simply because mold-related damage occurs in the same area that was damaged by a covered loss, e.g., rainwater intrusion. Instead, State Farm contends that there is no additional coverage for mold-related damage regardless of what caused the mold.

In opposition, Plaintiffs reiterate that the Grace King House sustained a massive water intrusion by a non-excluded peril, e.g., wind-driven rain, and that mold developed on every part of the home that was damaged by water during the storm. Plaintiffs deny that their damages were caused by mold but instead contend that their damages were caused by wind-related

---

[2] Plaintiffs clarified in their opposition memorandum that they do not seek recovery in connection with the invoices/estimates submitted by Gurtler Bros., Mold Testing and Remediation, Richard White, and Driskill. Thus, only the work by Kid Gloves and Ryan Environmental Services remains in dispute.

3

water intrusion.  Plaintiffs remind the Court that the question of whether damage was caused by mold or by water is a fact determination to be made by the jury.

Plaintiffs contend that the policy's mold endorsement does not exclude coverage where mold results from a covered loss like a windstorm but rather the exclusion only applies where the damage itself is caused by mold.  Plaintiffs assert that the interpretation of the mold endorsement that State Farm urges would be contrary to the directives of the Insurance Commissioner and therefore against public policy.  Finally, Plaintiffs argue that State Farm has the burden of proving the applicability of any policy exclusions, including mold, and that the Court should withhold ruling on State Farm's motion until Plaintiffs can produce additional expert reports as to causation.[3]

---

[3] Coverage A of State Farm's policy pertaining to losses insured for the dwelling is an "open peril" policy, subject to certain exclusions including mold.  (Rec. Doc. 49, Def. Exh. A at 7).  Under Louisiana law, the insurer has the burden of proving the applicability of an exclusionary clause within the policy. Coleman v. Sch. Bd., 418 F.3d 511, 517 (5th Cir. 2005) (quoting Doerr v. Mobil Oil Corp., 774 So. 2d 119, 124 (La. 2000)).  Thus, with respect to their immovable property, Plaintiffs need only prove that the property sustained an accidental direct physical loss.  The burden then shifts to State Farm to prove that an exclusion applies.

However, Coverage B pertaining to personal property is a "named peril" policy in that the damage must be caused by one of the perils specifically enumerated in the policy, including windstorm.  (Rec. Doc. 49, Def. Exh. A at 7).  With respect to personal property, Plaintiffs have the burden of proving that their losses were caused by a specific named peril.  If they meet that burden, State Farm would then have to prove that an appropriate exclusion applies in order to avoid coverage.

*2.  Law and Analysis*

**Summary Judgment Standards**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  <u>TIG Ins. Co. v. Sedgwick James</u>, 276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party.  <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  <u>Id.</u> (citing Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  <u>Id.</u> (citing <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1993)).

**Mold Exclusion**

Under Louisiana law an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts under Louisiana law. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 206 (5th Cir. 2007) (quoting Cadwallader v. Allstate Insurance Co., 848 So. 2d 577, 580 (La. 2003)). An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy. Id. (quoting La. R.S. § 22:654 (2004)). An insurance contract should not be interpreted "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." Id. (quoting Cadwallader, 848 So. 2d at 580). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability. Id. (quoting Carbon v. Allstate Ins. Co., 719 So. 2d 437, 440 (La. 1998)).

Plaintiffs have produced invoices in this litigation that clearly pertain to treatment for the presence of mold. However, Plaintiffs' policy contains a FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT which supplements the LOSSES NOT INSURED section of the policy to read as follows:

> We do not insure under any coverage for any loss which would not have occurred ***in the absence of*** one or more of the following excluded events. We do not insure for such loss ***regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss***; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> * * *
>
> g. Fungus.[4] We also do not cover:
>
> (1) any loss of use or delay in rebuilding, repairing or replacing covered property, included any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;
>
> (2) any remediation of fungus, including the cost to:
>
> (a) remove the fungus from covered property or to repair, restore or replace that property; or
>
> (b) to tear out and replace any part of the building or other property as needed to gain access to the fungus; or
>
> (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

(Rec. Doc. 49, Def. Exh. A at 10) (emphasis added). Pretermitting application of the appropriate burden of proof depending on the nature of the property involved, see note 3, supra, this exclusion clearly precludes coverage where mold is the peril that damages property. Plaintiffs concede as much. So, for example, where mold ultimately destroys sheetrock in a perpetually humid area of the house, coverage is excluded.

---

[4] "Fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi. (Rec. Doc. 49, Exh. A).

Unlike the foregoing example where damage is caused directly by the presence of mold, Plaintiffs contend that their mold is a manifestation of the covered rain damage that they sustained. In other words, the mold is a mere element of the damages that they sustained from rain as opposed to the damage causing peril itself. And although Plaintiffs do not say as much, the mold damage at issue is not on walls, etc. that were so damaged by water as to require total replacement because State Farm concedes that otherwise covered damage does not cease to be covered simply by virtue of the presence of mold. Thus, by implication the mold damage at issue is either on walls, etc. that were wet by rain but not so damaged as to require replacement or the mold simply became ubiquitous in the house due to the high levels of moisture that resulted from the inundating rain.

Unfortunately, these questions, like the question of whether Plaintiffs' mold constitutes a damage-causing peril or simply an element of water damage, are not material in light of the breadth of the policy's mold endorsement. Mold as an element of water damage is a physical loss to the property involved even where the underlying water damage is not so severe as to require replacement of the damaged area. The mold endorsement specifically states that a loss attributable to mold is not covered regardless of its cause or other causes at play. Thus, even where mold results from a covered cause of loss the

endorsement unambiguously excludes coverage.

Moreover, without the mold endorsement, mold would simply be one of the named excluded perils, i.e., a damage-causing agent, for dwelling coverage.  Thus, without the mold endorsement, Plaintiffs argument that creates a distinction between mold damage and damage caused by mold would be more persuasive.  But the endorsement amended the policy to broaden the exclusion and take it beyond the situation where mold functions as a damage-causing peril to a dwelling.  Pursuant to the endorsement, when the loss at issue would not have occurred in the absence of mold, the loss is not covered regardless of the cause of the mold. Mold that does not itself damage the underlying property but merely plagues it is nevertheless a "loss" because the mold must be treated and/or removed in order to restore the property to its normal state.  Thus, even where mold is simply an element of damage that results from a covered cause of loss, the costs of testing, investigating, treating, containing, decontaminating, removing, and disposing of mold are not covered.  The cases cited by Plaintiffs from other jurisdictions that hold to the contrary are not persuasive because the language in the policies at issue clearly allowed for a contrary interpretation. See, e.g., Eckstein v. Cinn. Ins. Co., 469 F. Supp. 2d 455 (W.D.Kenn. 2007); Simonetti v. Selective Ins. Co., 859 A.2d 694 (N.J. Super. Ct. App. Div. 2004).  The mold endorsement in Plaintiffs' policy does

9

not.

Plaintiffs assert that the interpretation of the mold endorsement that State Farm urges would be contrary to the directives of the Insurance Commissioner and therefore against public policy. The Office of the Commissioner of Insurance is a constitutionally-created office, and the elected official holding that office is charged with the administration of the Insurance Code and the protection of the public interest in the realm of insurance. Doerr v. Mobil Oil Corp., 774 So. 2d 119, 137 (La. 2000) (citing La. Const. Art. IV § 11; La. R.S. § 22:2). No insurance policy is permitted to be issued in this state without the prior approval of its provisions by the Commissioner. Id. (citing La. R.S. § 22:620(A)(1) recodified as La. R.S. § 22:861). By statute the Commissioner is required to disapprove any endorsement that does not comply with law, is misleading, or unreasonably or deceptively affects the risk purported to be assumed in the general coverage of the policy. La. R.S. § 22:862. Because of the Commissioner's role in the regulation of insurance, his opinion regarding matters within his province is persuasive but it is the province of the courts to resolve disputes over insurance coverage. Doerr, 774 So. 2d at 135.

On December 28, 2001, Commissioner Robert Wooley announced in Advisory Letter 01-02 ("AL 01-02") that the LDI would allow the use of mold endorsements in insurance policies and that

coverage would be excluded even where the mold results from a covered cause of loss. (Rec. Doc. 62, Pla. Exh. A). In the aftermath of Katrina, Commissioner Wooley issued an Addendum to AL 01-02 ("the Addendum") that purports to clarify the intent of AL 01-02. (Rec. Doc. 62, Pla. Exh. B). In the section captioned "What's Covered," the Commissioner explained that where covered water damage occurs the presence of mold does not relieve the insurer of its obligation to replace and/or repair ruined sheetrock or carpet, for instance, "including taking the usual and customary steps of treating the damaged area with bleach and thoroughly drying it out." (Id.). In the very next sentence, however, the Commissioner reiterates that the insurer does not have a separate obligation to remediate[5] any damage arising directly from mold. (Id.).

That same Addendum contains a section captioned "Acceptable Exclusions" and that section specifically states that the LDI will allow mold endorsements "that exclude coverage for mold that results from a covered cause of loss if the exclusion is directed at precluding coverage for remedial costs, including but not limited to the costs of testing the insured premises for mold, or the cost of eradication, containment or fumigation of the insured premises." (Id.). This statement directly supports State Farm's

---

[5] Remediate means to test, investigate, treat, contain, decontaminate, remove, or dispose of mold. (Rec. Doc. 62, Pla. Exh. B n.1).

11

position. However, the very next sentence states that "exclusions shall not exclude coverage for the removal of mold on the items damaged," (Id.), and this sentence seems to support Plaintiffs' position. It is difficult to reconcile the Commissioner's statements in the Addendum and the document is arguably internally inconsistent. If it were an insurance policy it would undisputedly be considered ambiguous.

Nonetheless, the following points must be recognized with respect to the Commissioner's published opinions and the case at hand. First, the mold endorsement would not be part of Plaintiffs' policy but for the approval of the Commissioner. The endorsement in State Farm's policy is worded so as to allow for a far broader interpretation than what the Commissioner suggests at times in the Addendum, which does not specifically refer to a State Farm policy.[6] Second, under Louisiana law the policy's terms govern the parties' obligations and the Commissioner has no authority to interpret the policy to resolve a coverage dispute. Plaintiffs point to no act by the Legislature to suggest that the endorsement is against public policy. Finally, given that the

---

[6] Plaintiffs have submitted a Press Release issued by Commissioner Wooley's office on January 21, 2003, that is directed specifically at State Farm's mold exclusion. The release states that "[r]epair of any covered damage resulting from a covered accidental direct physical loss will include the removal of mold or fungus on the items damaged. State Farm will not deny an otherwise covered claim due to the presence of mold or fungus on the items damaged by a covered loss." (Rec. Doc. 62, Pla. Exh. C).

Addendum clearly states that mold from a covered cause of loss is excludable, it is difficult to reconcile the Commissioner's statements that refer to the insurer's obligation to remove mold from damaged items.  In short, the Addendum is ambiguous but the mold endorsement contained in the policy is not, and the policy governs.

Finally, because the endorsement precludes coverage regardless of the cause, it is immaterial whether the mold present is the direct result of wind-driven rain entering the house or whether the mold constitutes the peril that caused damage to the property.  The Court does not find that material issues of fact present an obstacle to the issues that State Farm has presented via its motion for summary judgment.  And the Court is not persuaded that additional expert reports on the issue of causation would be pertinent.

As part of the relief sought via its motion, State Farm seeks an order from the Court expressly stating that the fees charged by Kid Gloves, Inc. and Ryan Environmental Services are excluded from coverage.  The Court has reviewed these invoices and cannot fully determine the applicability of the mold exclusion to the specific services referenced in those invoices so the Court will not expressly exclude those invoices from evidence at this time.  However, Plaintiffs now have the Court's ruling on the applicability of the mold endorsement and to the

extent that the Court later determines that recovery of the fees charged by Kid Gloves, Inc. and Ryan Environmental Services would be inconsistent with this Order and Reasons, the Court will exclude evidence of those charges at trial.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment As to Plaintiffs' Mold Claims (Rec. Doc. 49)** filed by defendant State Farm Fire & Casualty Co. is **GRANTED** as explained above.

August 21, 2009

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE